53 CCPA

**Application of David GOLDMAN.**

**Patent Appeal No. 7623.**

United States Court of Customs and Patent Appeals.

Feb. 10, 1966.

Judah B. Felshin, New York City, for appellant.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for Commissioner of Patents.

Before RICH, Acting Chief Judge, MARTIN, SMITH and ALMOND,

Judges, and Judge WILLIAM H. KIRK-PATRICK.*

ALMOND, Judge.

David Goldman appeals from the decision of the Board of Appeals affirming the rejection of claims 18, 20, 23, 26 and 31 to 34, inclusive, in appellant's application[1] relating to washers for animal cages or other devices wholly movable into the washer. The examiner allowed ten claims, and the board reversed the examiner's rejection of two more.

Appellant's invention as called for in the appealed claims is substantially illustrated by Figure 4 of the drawings:

FIG. 4

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge Worley, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. Serial No. 265,006, filed March 8, 1963, for "Animal Cage Washer."

The washer comprises a casing 11 having a top wall 12, rear wall 15, bottom wall 16, and side walls. The bottom wall 16 has a rearwardly and downwardly inclined portion 17 from which wall 18 extends downwardly. Extending from wall 18 is a horizontal transverse shoulder 19 from which extends downwardly an inclined wall 20. Extending from rear wall 15 is a shoulder wall 21 from which extends downwardly an inclined wall 22. Walls 20, 22 converge downwardly and are interconnected at their lower ends by a horizontal suction pipe 23 thereby forming a narrow long well of relatively small volume. Shoulders 19, 21 form an upperpart of the well and converging walls 20, 22 form a lower narrow part thereof. The well extends entirely across the back of the housing. The suction pipe 23 is coextensive with the well, and also extends entirely across the casing from side to side.

Steam pipes 50 (heating means), coextensive with the well, are in the upper wide part of the well above shoulders 19, 21. Three wire baskets rest on top of the steam pipes. A pair of horizontal tracks 48 are disposed above bottom wall 16 and below the front door of the cage. The slope of the bottom wall provides space at the rear below the level of the tracks, for the baskets. The baskets are so arranged that they can be individually removed upwardly. The suction pipe 23 has holes distributed along its entire length. The outlet end of the sunction pipe leads to the inlet end of a motor operated pump. The outlet end of the pump leads to a Y fitting, one branch of which leads to spray heads which rise upwardly. Another branch of the Y fitting leads to a drain pipe which extends downwardly. A drain valve in the drain pipe can be opened or closed. When the drain valve is open, and the pump is operating, water will be pumped to the drain and not to the spray heads. When the valve is closed, with the pump operating, water will be pumped up to the spray heads. If the pump is not operating and the drain valve is open, water in the spray heads and pipes leading to the spray heads will drain out to the drain.

Appellant asserts that his system, as above described, secures the following advantages:

The fact that the well extends entirely across the casing and the suction pipe also extends entirely across the well and has holes distributed substantially along its entire length, makes for very quick circulation. The fact that the steam pipes are coextensive with the suction pipe makes for quick heating. Thus we have quick circulation and quick heating, allowing thorough washing with use of relatively little water in a relatively small well.

The fact that the suction pipe is at the lower part of the well ensures that substantially all the water in the well must go into the suction pipe.

Claim 18 is reproduced as illustrative:

18. A washing machine, comprising a housing having a front wall provided with a front door, a rear wall, a pair of side walls and a bottom wall below said door, said bottom wall having a portion sloping downwardly and rearwardly from the front door, and a depressed well located at the lower rear end of said sloping wall and extending therebeyond and located near said rear wall, and extending transversely substantially from one side wall to the other side wall, heating means in the upper part of said well and extending transversely, substantially coextensively with said well, and a fixed suction pipe in the lower part of the well and below said heating means and substantially coextensive with and longitudinally of the well and having an outlet at one end thereof and said pipe being formed with communication means between the inside of the pipe and the well longitudinally of said pipe and distributed substantially along the entire length of the pipe.

The references are:

| | | |
|---|---|---|
| Frech | 2,715,405 | August 16, 1955 |
| Jones et al. | 2,960,990 | November 22, 1960 |
| Andersen (Norway) | 64,134 | November 3, 1941 |
| Zademach (Canadian) | 577,825 | June 16, 1959 |

Jones et al. (Jones) disclose a dishwasher disposed within a kitchen sink cabinet. Configuration of the washer housing is generally rectilinear with a forward pull down door. The housing bottom slopes downwardly from the front to a rear sump. The bottom of the sump slopes from both ends towards a medially disposed chamber thereunder. Wash and rinse waters which collect there pass either through the pump-disposal unit to the sink drain or through a screen and pump to the spray heads. The sump preferably includes an immersion-type heater for imparting thermal energy to the liquid solutions which accumulate in the sump and the dish rack is provided with side wall portions which encircle the rack area. Roller means are attached to the rack which engage a track carried by the end walls of the casing and also engage the trackway surface formed on opposite ends of the inner wall surface of the door. The horizontal tracks form extensions of the door tracks when the door is open rendering said tracks level at the lower end of the door. Jones shows two pumps activated by separate motors with a drain pipe extending upwardly from the disposal unit.

Andersen discloses machinery for cleansing engine parts and similar metal articles, comprising a tank having a heater at one end, horizontally disposed screens in edge engagement, and a perforated suction pipe below the screens at the opposite and lower end of the tank. Spray headers are disposed above the screens and along the sides of the tank. A pump draws liquid from the bottom of the tank through the suction pipe to either the spray headers or to an outlet pipe depending on the setting of respective valves. The outlet pipe extends upwardly above the spray pipes, hence two valves are required. In order to drain, the lower valve must be closed and the upper valve opened. To pump to the spray heads, the valve operation is reversed.

Frech discloses a dishwasher with horizontally disposed sieves substantially covering the cross-sectional area of the casing and resting on shoulders formed in the casing. The sieves are disposed below narrow horizontal rails, the latter being along the sides of the casing.

Zademach shows a cabinet rack washer with steam pipes to heat wash water in a lower sump. The apparatus shows wide tracks for the cabinet to be washed. The sump has a side extension in which vertical screens are disposed ahead of the pump.

The examiner held claims 18, 33 and 34 unpatentable over Jones in view of Andersen. He pointed out that Jones lacked (1) the suction pipe "substantially coextensive with and longitudinally of the well," and (2) the communication means "longitudinally of said pipe and distributed substantially along the entire length of the pipe." The examiner noted that the Andersen suction pipe obviously had communication means between the inside of the pipe and the well, said means being distributed longitudinally and substantially coextensive with and longitudinally of the well. It was consequently reasoned that it would be "obvious to merely substitute the suction pipe of Andersen for the suction pipe and sump means" shown in Jones. The ex-

aminer further considered that the suction pipe of Andersen could readily be adapted by anyone possessing only ordinary mechanical skill in the art to cooperate with the well walls in the Jones apparatus to perform the same function that is disclosed by the appellant.

Turning to claim 33, the examiner observed that it would be no more than an obvious mechanical expedient to connect Jones' drain outlet to the bottom of their pump by means of a valve and thereby utilize one pump for both recirculating and draining functions as shown to be old by Andersen. We are aware of no challenge to the examiner's observation that it is conventional in the art under consideration to "utilize a single pump for both recirculating and drainage functions."

Claim 20 was held unpatentable over Jones and Andersen on the same basis as above applied, taken in further view of Frech. The examiner considered it to be obvious to substitute the screen means of Frech for the screen means in the Jones-Andersen combination. He perceived no reason, nor do we, why the screens of Frech would not coact beneath the tracks of the combined Jones-Andersen apparatus in cooperation with the well and sump thereof to perform the same function that is disclosed by appellant. It was regarded as an obvious mechanical expedient to support the screen on the heating means of Andersen.

Claim 23 was held unpatentable over the basic combination of Jones and Andersen taken in further view of Zademach. As has been noted, Zademach discloses the use of steam pipes to heat wash water in a lower sump. The examiner deemed it an obvious expedient to use steam pipes for the heater of the Jones-Andersen combination.

Claim 26 was held unpatentable over all four references as previously combined by the examiner.

Claims 31 and 32 were rejected as unpatentable over Jones in view of Frech

and Zademach. It appears that the examiner considered Zademach suggestive of using wider tracks instead of the more narrow tracks of Jones, and Frech suggestive of using sieves as therein disclosed for the screen of Jones supported on the heater with the end sieves underlying the tracks. In this connection, the examiner noted that the tracks of Zademach are relatively wide and that the screen means of Frech comprises a control perforated sieve removably mounted between two parallel trackways and a pair of perforated sieves beneath said trackways.

The board affirmed the examiner in holding claims 18, 20, 23, 26 and 31 to 34, inclusive, unpatentable over the prior art, under 35 U.S.C. 103, for the reasons fully set forth in his answer. The board noted that the "configuration of the washing chamber and the sump therefor are a matter of choice" and that if complete discharge of the fluid were desired, it would be obvious to place the exhaust at right angles to the position shown and at the lowest part of the sump.

The board stated:

It would also be obvious to anyone that a perforated pipe of suitable size having perforations therein, would handle a larger volume of water if it extended all the way across the tub rather than part way across.

The Andersen patent shows a heater extending all the way across the tub. It is not apparent to us that the location is critical with respect to the drain, however, Jones et al. show the heater over the drain, thus, it would be obvious to place the heater of Andersen over the drain pipe.

The above conclusion borders on the axiomatic and we are in full concurrence therewith. As in In re Goldman, Cust. & Pat.App., 356 F.2d 141,[2] concurrently argued and submitted herewith, we have analyzed the references in relevant detail

---

2. Serial No. 154,254, filed November 22, 1961.

pointing out what they would fairly teach to one skilled in the subject art at the time the invention claimed herein was made. We have pointed out the application of the references and the constructions placed thereon by the tribunals below. In our view, the references have been fairly applied and their teachings properly assessed, with the consequence of rendering obvious to one skilled in the art, within the purview of section 103, the invention here claimed by appellant.

Perceiving no reversible error in the decision of the board, we accordingly affirm.

Affirmed.